## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**SYNOVUS BANK, formerly known**
**as Columbus Bank and Trust Co., as successor**
**in interest through name change and by merger**
**with Coastal Bank and Trust of Fla. F/K/A**
**Bank of Pensacola,**

     **Plaintiff,**

**v.**                                **CASE NO.  3:12-cv-132-RS-EMT**

**QUAIL LAKE DEVELOPERS, LLC.,**
**CRAIG R. SIMS, and**
**DANIEL YANNETTE,**

     **Defendants.**
_____/

### ORDER

     Before me are Synovus Bank's Motion for Summary Judgment (Doc. 33),

Defendants' Response (Doc. 46), Synovus Bank's Reply (Doc. 56), and

Defendants' Surreply (Doc. 60).

### STANDARD OF REVIEW

     The basic issue before the court on a motion for summary judgment is

"whether the evidence presents a sufficient disagreement to require submission to a

jury or whether it is so one-sided that one party must prevail as a matter of law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512 (1986).

The moving party has the burden of showing the absence of a genuine issue as to

any material fact, and in deciding whether the movant has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). Thus, if reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)). However, a mere 'scintilla' of evidence supporting the nonmoving party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 251).

## BACKGROUND

The background of this action is largely undisputed. Quail Lake Developers, LLC ("Quail Lake") purchased property in Escambia County, Florida, in 2005. On April 16, 2007, Quail Lake refinanced the property and executed a promissory note to the Bank of Pensacola, a predecessor to Synovus Bank, for over $1.3 million. The note was renewed on May 23, 2008, December 19, 2008, and January 21, 2010. Defendants Sims and Yannette executed continuing guaranties with the original note and each renewal. When the January 21, 2010 note matured on

January 21, 2011, Synovus unilaterally extended the maturity date through April 21, 2011. The maturity date was again unilaterally extended by Synovus through July 21, 2011. Synovus' policies permitted it to unilaterally extend the maturity dates only twice. Accordingly, Synovus and Defendants entered into negotiations to further extend the maturity date. Defendants claim that there was an agreement formed in July of 2011 that Synovus would extend the loan for 90 days and then the loan would be amortized on a 15-year, 4.5% fixed interest schedule with a five year balloon, and Defendant Sims would supply property located in North Carolina as collateral. On August 9, 2011, Synovus sent a letter to Quail Lake and Sims outlining the terms and conditions it would be willing to consider for renewal of the loan. On August 15, 2011, Quail Lake executed and delivered to Synovus a promissory note in the principal amount of $992,446.77, with a maturity date of November 15, 2011. The note provides that it is to be construed under Florida law. Sims and Yanette contemporaneously executed guaranties, which provide that they are to be construed under Georgia law. Quail Lake made the monthly interest payments as required, but failed to make the payment due at maturity.

Defendants claim that when the original note was executed in 2007, the Bank of Pensacola assured Quail Lake that the loan would be renewed annually. They also claim that Synovus refused to renew the note in November of 2011 pursuant to the parties' agreement, and instead would only renew the note if Sims

3

cross-collateralized a property subject to a separate loan with Synovus, which

would result in over-collateralization of the loan at issue here.  Accordingly,

Defendants argue, Synovus is estopped from calling the note due and is liable for

both negligent and fraudulent misrepresentation.  Synovus has moved for summary

judgment on its claims for defaulted promissory note against Quail Lake and

breach of guaranty by Sims and Yannette as well as the counterclaims.

## ANALYSIS

Defendants do not dispute that the note is due and has not been paid.  They

instead rely on five affirmative defenses: breach of fiduciary relationship based on

"financial guidance as to the Defendants' business ventures," estoppel for violation

of agreement to continue financing, unclean hands, accounting, and accord and

satisfaction.

In his affidavit in opposition for Synovus' motion for summary judgment

(Doc. 48), Sims stated that he has "had an extensive lending relationship with the

Plaintiff bank with a proven track record of payment," and that "Synovus, or its

predecessors, . . . fraudulently induced Quail Lake, Yannette, and [Sims] to enter

into the banking relationship with the Bank of Pensacola, based on the Bank's

representations that the Bank was financially secure and would continue the

banking relationship with [them] and renew [their] loans annually."  Doc. 48, ¶¶ 5-

6.  Further, "[i]n reliance on Synovus' representation that it would continue to

renew the loan annually, and while the terms of the renewal were being drawn up as agreed to by the parties, the managing members of Quail Lake, Daniel Yannette and [Sims], in [their] individual capacities, executed the Guaranties." *Id.* at ¶ 9.

Defendants first argue that Synovus has breached its fiduciary duties to them and are therefore estopped from enforcing the terms of the note and guaranties. However, under Florida law, it is clear that a lender does not ordinarily owe fiduciary duties to its borrower. "Generally, the relationship between a bank and its borrower is that of creditor to debtor, in which parties engage in arms-length transactions, and the bank owes no fiduciary responsibilities.*" Capital Bank v. MVB, Inc.*, 644 So. 2d 515, 518 (Fla. 3d DCA 1994). The fact that a borrower trusted a lender, without more, does not create a fiduciary relationship. *See Azar v. Nat'l City Bank*, 2009 WL 3668460, at *2 (M.D. Fla. 2009) (citing *American Honda Motor Co., Inc. v. Motorcycle Information Network, Inc.*, 390 F. Supp. 2d 1170, 1179 (M.D. Fla. 2005)). To impose fiduciary duties on a lender, the bank must know or have "reason to know of the customer's trust and confidence under circumstances exceeding an ordinary commercial transaction." *Capital Bank*, 644 So. 2d at 521. A lender's long standing business relationship with a borrower, without more, cannot transform the lender-borrower relationship into a fiduciary one. *See, e.g., Klein v. First Edina Nat'l Bank*, 293 Minn. 418, 196 N.W. 2d 619 (1972) (cited repeatedly in *Capital Bank*, 644 So. 2d 515).

Without citing any authority, Defendants argue that whether a fiduciary relationship exists is a determination for the fact finder to make at trial.  However, as with any other factual dispute, this issue can be resolved on a motion for summary judgment if there is no genuine issue as to any material fact.[1]  I find that, even construing the evidence in the light most favorable to Defendants, the relationship between them and Synovus was an ordinary lender-borrower relationship, so Synovus and its predecessors owed no fiduciary duties to Defendants.

Three of the other four affirmative defenses - estoppel for violation of agreement to continue financing, unclean hands, and accord and satisfaction - are based on the contentions that Defendants were assured that the note would be renewed annually and that Defendants and Synovus had reached an agreement regarding renewal of the loan in late 2011.  The counterclaims are also based on those contentions.  Although Defendants argue that the Bank of Pensacola represented to them that it was financially secure and would renew the loan annually, there is no allegation that this "misrepresentation" was in writing.  There is also no allegation that any agreement reached regarding renewal of the loan in late 2011 was in writing.

---

[1] In fact, it could be resolved even on a motion to dismiss.  In *Azar v. National City Bank*, 2009 WL 3668460, at *2 (M.D. Fla. 2009), the plaintiff's fiduciary duty claim was disposed of on a motion to dismiss where he "[had] not asserted anything more than a longstanding relationship between himself and the bank and his trust in the bank's employees to guide him in making financial decisions."

Florida law provides that a "debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." Fla. Stat. § 687.0304. "'Credit agreement' means an agreement to lend or forbear repayment of money, goods, or things in action, to otherwise extend credit, or to make any other financial accommodation." *Id.* The plain language of section 687.0304 makes clear that the term "credit agreement" includes a representation to renew a loan. A loan renewal is a means to "forbear repayment." Forbearance is the "act of refraining from enforcing a right, obligation, or debt." Black's Law Dictionary 294 (3d pocket ed. 2006). By renewing a loan, the creditor agrees to make payments due at a later date. The creditor refrains from enforcing their right to collect debt on a certain date and agrees to a right to collect on a future date. Further, section 687.0304 provides that "credit agreements" include "mak[ing] any other financial accommodation." Certainly, this expansive definition includes any purported oral representations to renew loans. Based on the plain language of the statute, Defendants cannot maintain any action based upon Synovus or its predecessors' oral representations regarding annual renewal of the loan or any purported agreement reached before they signed final 90-day extension and guaranty agreements. Accordingly, each of Defendants' counterclaims must be dismissed.

Finally, the parol evidence rule precludes consideration of oral agreements which contradict the terms of a valid contract. *See, e.g., Solary v. Webster*, 35 Fla. 363, 373 (1895); Ga. Code § 13-2-2 & 24-6-1. This is because "reliance upon alleged oral misrepresentations is unreasonable and unjustified where the subsequently executed written document does not contain the alleged representations or promises." *Jaffe v. Bank of Am., N.A.*, 667 F. Supp. 2d 1299, 1321 (S.D. Fla. 2009), *aff'd*, 395 F. App'x 583 (11th Cir. 2010). Thus, Defendants' argument that the note was to be renewed annually and that an agreement had been reached requiring Synovus to continue to finance the loan is without merit. Accordingly, the estoppel, unclean hands, and accord and satisfaction affirmative defenses fail. Synovus has provided an accounting, which was requested by Defendants as a final affirmative defense.

**IT IS ORDERED:**

1. The Motion for Summary Judgment (Doc. 33) is **GRANTED** on the issue of liability only. Plaintiff shall file an affidavit with a complete and current account of all damages.

2. Defendants' Counterclaims are **dismissed with prejudice**.

**ORDERED** on October 18, 2012.

/s/ Richard Smoak
**RICHARD SMOAK**
**UNITED STATES DISTRICT JUDGE**